UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
RUCHEL GOLDENBERG,

                Plaintiff,

-against-

TRANSUNION, LLC and EQUIFAX
INFORMATION SERVICES LLC,

                Defendants.
---------------------------------------------------------

MEMORANDUM & ORDER

23-CV-9514 (NGG) (LKE)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Ruchel Goldenberg brings this action against Defendants TransUnion, LLC ("TransUnion") and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.* (Complaint ("Compl.") (Dkt. 1).) Pending before the court is Defendants' fully briefed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* Defendants' Motion for Judgment on the Pleadings ("Mot.") (Dkt. 37-1); Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Opp.") (Dkt. 38); Defendants' Reply in Support of Their Motion for Judgement on the Pleadings ("Reply") (Dkt. 39).) For the reasons that follow, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background[1]

This dispute centers around allegedly inaccurate credit reports furnished by the Defendants in response to late payments or outstanding balances on Plaintiff's payment accounts with Honda, Webbank/Dell ("Webbank"), and JP Morgan Chase ("Chase"). The court summarizes the factual allegations as to each payment account in turn.

#### 1. Honda Account

In March 2023, Plaintiff opened an account with Honda to finance her Honda car payments. (Mot. at 1; Opp. at 1.) Plaintiff set up autopay on this account to "ensure timely monthly payments." (Compl. ¶ 18.) At some point thereafter, Plaintiff reviewed her credit report and discovered that Honda "was reporting late payment notations." (Id. ¶ 20.) Plaintiff "immediately" contacted Honda to inquire about the late payment notations, whereupon a Honda representative informed Plaintiff via telephone that there "was an issue with autopay" even though Plaintiff had sufficient funds in her account. (Id. ¶¶ 21-23.) The Honda representative told Plaintiff that the autopay issue "was resolved" and that "there should be no further issues" moving forward. (Id. ¶ 26.) Plaintiff paid the outstanding balance, and the Honda representative told Plaintiff that "she would not be marked late on her credit reports." (Id. ¶¶ 25, 27.)

Nevertheless, Defendants prepared and issued credit reports reflecting the late payment notations. (Id. ¶¶ 28-29.) Specifically, both Equifax and TransUnion marked Plaintiff as 30 days late in May 2023; Equifax also listed her as 60 days late in June 2023.

---

[1] The following facts are drawn from the Complaint and, for purposes of this motion for judgment on the pleadings, are assumed to be true. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018).

(*Id.* ¶¶ 33-34.) Plaintiff notified Defendants of the disputed inaccuracy in letters dated July 24, 2023, which "explained the reason why she should not be marked late." (*Id.* ¶¶ 35-36.) TransUnion responded to the letter but did not conduct an investigation; Equifax did not respond. (*Id.* ¶¶ 37-39.)

### 2. Webbank Account

Defendants also prepared and issued credit reports[2] reflecting "an inaccurate outstanding balance" on Plaintiff's Webbank Account. (*Id.* ¶ 41.) After noticing the alleged inaccuracy, Plaintiff informed Defendants via letter that she "was making all [her] payments on time, but [Webbank] kept returning [her] ACH's." (April 3, 2023 Letter to TransUnion (Dkt. 37-1) at ECF pp. 20-22; April 3, 2023 Letter to Equifax (Dkt. 37-1) at ECF pp. 23-25 (collectively, "April 2023 Letters").)[3] According to Plaintiff, although Webbank eventually accepted the payments, they "went through . . . way after the due date." (April 2023 Letters at ECF pp. 21, 24.) Thus, Plaintiff informed the Defendants, the "account[s] w[ere] paid off" and she "should not be reported as late or as having a balance." (*Id.* at ECF pp. 21, 24.)

---

[2] Plaintiff does not identify the credit reports affected by her allegedly inaccurate Webbank Account balance. (*See* Compl. ¶ 41.)

[3] The April 2023 Letters are not appended to or otherwise referenced in the Complaint; rather, Defendants included the Letters as attachments to their motion for judgment on the pleadings. (*See* Compl. ¶¶ 40-41; April 2023 Letters.) The court may consider the April 2023 Letters in adjudicating Defendant's motion because the Letters are "documents possessed by or known to the plaintiff and upon which [she] relied in bringing the suit." *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In particular, the April 2023 Letters are signed by Plaintiff and discuss in greater detail the Webbank- and Chase-related allegations in the Complaint. (Compl. ¶¶ 40-41; April 2023 Letters.) As such, the court will consider these documents in deciding Defendant's motion.

### 3. Chase Account

Finally, TransUnion prepared and issued credit reports[4] reflecting an "inaccurate late payment notation for September 2022 on [Plaintiff's] JPMCB [Chase] Card." (Compl. ¶ 40; April 2023 Letters.) In the same April 2023 Letters, Plaintiff notified Defendants that their respective credit reports marked her as late on an $8 interest charge despite the fact that she "settled a dispute with [Chase] through verbal communication" and Chase "forgave and rendered null and void" the interest payment. (April 2023 Letters at ECF pp. 21, 24.)

### B. Procedural History

Plaintiff filed this action against Defendants on December 27, 2023, alleging willful and negligent violation of the FCRA.[5] (Compl. ¶¶ 57, 64.) Plaintiff alleges that Defendants willfully violated Section 1681e of the FCRA by "failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that [Defendants] maintained concerning the Plaintiff." (*Id.* ¶ 58.) Additionally, Plaintiff alleges that Defendants negligently violated Section 1681i(a) of the FCRA by "failing to delete inaccurate information from the credit file of the Plaintiff after receiving actual notice of such inaccuracies and conducting reinvestigation and by failing to maintain reasonable procedures with which to verify

---

[4] Plaintiff does not identify the credit reports affected by her allegedly inaccurate Chase Account balance. (*See* Compl. ¶ 40.)Additionally, the Complaint alleges that the Chase-related inaccuracy appeared on TransUnion's and Experian Information Solutions, Inc.'s ("Experian") credit reports; the Complaint makes no mention of Equifax in connection with the Chase Account. (*Id.*)

[5] Plaintiff also sued Experian; however, the court terminated Experian as a Defendant on July 2, 2024 pursuant to a joint stipulation of dismissal. (*See* Joint Stipulation of Dismissal as to Experian Information Solutions, Inc. (Dkt. 32).)

the disputed information in the credit file of the Plaintiff." (*Id.* ¶ 65.)

As to the Honda Account, Plaintiff alleges that "Honda's reporting [was] materially misleading" because the late payment was "due to a problem beyond her control," and she "should not bear the liability of correcting any errors that occur on Honda's end related to the autopay platform." (*Id.* ¶¶ 30-32.) As to the Webbank and Chase Accounts, Plaintiff claims that Defendants issued credit reports reflecting "an inaccurate outstanding balance" on her Webbank Account and an "inaccurate late payment" on her Chase Account. (*Id.* ¶¶ 40-41.) Plaintiff claims that Defendants' reports "ha[ve] negatively affected her credit score," causing her to be "denied credit." (*Id.* ¶¶ 42-49.)

Defendant Equifax answered the Complaint on February 26, 2024, denying liability under the FCRA. (Equifax Answer (Dkt. 13).) Defendant TransUnion answered the Complaint on March 18, 2024, denying liability under the FCRA and asserting several affirmative defenses. (TransUnion Answer (Dkt. 17).) During a conference on July 2, 2024, the court granted Defendants' request for leave to file a joint motion for judgment on the pleadings. (Min. Entry Dated 7/2/2024.) Pending before the court is Defendants' fully briefed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See generally* Mot.; Opp.; Reply.)

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding motions under 12(c), courts "employ the same standard

applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).[6]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions . . . are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Dismissal for failure to state a claim is appropriate if it is clear from the face of the complaint that a claim is barred as a matter of law. *See Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019).

### III. DISCUSSION

#### A. Applicable Law

The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer disputes "the completeness or accuracy of any item of information contained in [the] consumer's file at a consumer reporting agency," and the consumer

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

"notifies the agency . . . of such dispute," then, within 30 days of notification, the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *Hossain v. Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 362 (E.D.N.Y. 2023) (articulating same standard); *Spira v. TransUnion, LLC*, No. 23-CV-4319 (NSR), 2024 WL 2221662, at *3 (S.D.N.Y. May 16, 2024) (articulating same standard). Additionally, within five business days of notification, the consumer reporting agency "must notify the entity that furnished the disputed information." *Spira*, 2024 WL 2221662, at *3 (citing 15 U.S.C. § 1681i(a)(2)). The "FCRA imposes civil liability upon users and consumer reporting agencies that willfully or negligently violate the statute." *DiGianni v. Stern's*, 26 F.3d 346, 348 (2d Cir. 1994) (citing 15 U.S.C. §§ 1681n, 1681o); *see also U.S. v. Bormes*, 568 U.S. 6, 8 (2012) (The "FCRA imposes civil liability for willful or negligent noncompliance with its requirements.").

"In considering a challenge under [Section] 1681e(b) or [Section] 1681i, the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." *Hossain*, 693 F. Supp. 3d at 362; *Spira*, 2024 WL 2221662, at *3 (same). A "credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (quoting *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021)).

To be actionable under the FCRA, an alleged inaccuracy must be "objectively and readily verifiable" by the defendant credit reporting agency. *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023). For example, in *Mader*, the Second Circuit held that an alleged inaccuracy was not objectively or readily verifiable

7

when its accuracy turned on an "unresolved legal question regarding the application of [a provision of the Bankruptcy Code] to [the plaintiff's] education loan." *Mader*, 56 F.4th at 270. Though there is "no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature," *Sessa*, 74 F.4th at 43, credit reporting agencies "are not required to adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report," *Hossain*, 693 F. Supp. 3d at 363. Rather, credit reporting agencies need only focus on "straightforward, objectively and readily verifiable information when conducting [their] investigations under the FCRA to ensure accurate credit reports." *Id.*

### B. Application

Plaintiff claims that Defendants TransUnion and Equifax reported inaccurate information when they reported her payments to Honda and Webbank as late. (Compl. ¶¶ 29, 41.) In addition, Plaintiff claims that Defendant TransUnion reported inaccurate information when it included a late payment notation for her Chase Account. (*Id.* ¶ 40.) For the reasons that follow, Defendants' motion for judgment on the pleadings is granted with respect to the Honda- and Webbank-related allegations against both Defendants, and denied with respect to the Chase-related allegations against TransUnion.

#### 1. Honda and Webbank Accounts

Plaintiff does not dispute that her payments to Honda and Webbank were late. Indeed, she acknowledges that her Honda Account had an unpaid "outstanding balance," (Compl. ¶ 25; Opp. at 1), and that her payment to Webbank went through "way after the due date," (April 2023 Letters at ECF pp. 21, 24.) Nevertheless, Plaintiff contends that it was "technically inaccurate and materially misleading" for Defendants to "report Plaintiff late" when "viewed against Plaintiff's immediate and continued attempts at curing both accounts." (Opp. at 5.) Plaintiff contends

that caselaw "establish[es] that it is patently inaccurate and materially misleading to report Plaintiff's Honda and Webbank accounts delinquent because it suggests a degree of culpability that is simply absent from this case." (*Id.* at 5-7 (citing *Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 21-CV-563, 2021 WL 3510814 (M.D. Fla. Aug. 10, 2021); *Hauge v. AmeriHome Mortg. Co., LLC*, 565 F. Supp. 3d 1 (D. Mass. 2021); *Shaunfield v. MB Fin. Bank, N.A.*, No. 15-CV-0856, 2016 WL 631928 (N.D. Tex. Feb. 17, 2016)).)

Plaintiff's reliance on *Abukhodeir, Hauge,* and *Shaunfield* is misplaced. In addition to being out-of-circuit, these cases involve suits against furnishers, not credit reporting agencies. *See Spira*, 2024 WL 2221662, at *4 (explaining that *Abukhodeir, Hauge,* and *Shaunfield* "are distinguishable as they all involve a consumer filing suit against a *furnisher* instead of a consumer reporting agency") (emphasis in original); *Silber v. TransUnion, LLC*, No. 23-CV-07182 (NSR) (JCM), 2025 WL 588620, at *4 (S.D.N.Y. Feb. 24, 2025) (similar). For claims brought against credit reporting agencies, such as Defendants, "[c]ulpability and fault . . . is simply irrelevant in answering the threshold question at issue—whether the [credit reporting agency] reported an inaccuracy." *Spira*, 2024 WL 2221662, at *4; *Silber*, 2025 WL 588620, at *4 ("Plaintiff's allegations regarding fault do[] not invalidate the accuracy of the [credit reporting agency's] reporting."); *see also Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011) ("[T]he reason for the late payment is not relevant; the statute concerns accuracy.").

*Silber* is instructive. There, the plaintiff leased a vehicle and set up autopay; however, when he extended his lease, he "was not made aware that the existing autopay arrangements would not continue." *Silber*, 2025 WL 588620, at *1. The plaintiff then missed payments, which the furnisher reported to credit reporting agencies. *Id.* The plaintiff sued the credit reporting agencies

9

for willful and negligent violation of the FCRA, and the court granted the agencies' motion for judgment on the pleadings. *Id.* at *2-3, 5. The court found no inaccuracy in the credit reports, which merely "reported the missed payments which [the plaintiff] concede[d] he missed." *Id.* at *4. Additionally, the court rejected as "irrelevant" the plaintiff's argument that the missed payments were not his "fault." *Id.* ("Plaintiff's allegations regarding fault does not invalidate the accuracy of the CRA Defendants' reporting."). Similarly, in *Spira*, the court found no inaccuracy in credit reports reflecting a debt that "unquestionably existed" and "unquestionably went unpaid," despite the plaintiff's assertion that it was not his "fault." 2024 WL 2221662, at *4 (explaining that "[c]ulpability and fault . . . [are] simply irrelevant in answering the threshold question at issue—whether the CRA Defendants reported an inaccuracy"). Like the plaintiffs in *Silber* and *Spira*, Plaintiff's debts to Honda and Webbank "unquestionably existed," and, by Plaintiff's own admission, "unquestionably went unpaid." *Spira*, 2024 WL 2221662, at *4. (Compl. ¶ 25; Opp. at 1; April 2023 Letters at ECF pp. 21, 24.) As such, Defendants' credit reports reflecting these late payments were not "patently incorrect." *Mader*, 56 F.4th at 269.

Nor were Defendants' credit reports "misleading in such a way and to such an extent that [they] can be expected to have an adverse effect." *Id.* Plaintiff asserts that "it was materially misleading [for Defendants] to fail to report the reason behind [Plaintiff's] delinquencies." (Opp. at 10.) However, to support an allegation that a credit report is materially misleading, a plaintiff "must establish that the information provided by the [consumer reporting agency] is open to an interpretation that is directly contradictory to the true information." *Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021). Plaintiff does not satisfy this standard because no interpretation of her credit report directly contradicts the truth, which is that Plaintiff's payments to Honda and Webbank were, in fact, late.

Defendants' "failure to expound on an otherwise accurate report entry is not the type of misleading omission sufficient to constitute an inaccuracy under the FCRA." *Spira*, 2024 WL 2221662, at *5; *see also Silber*, 2025 WL 588620, at *4 ("Plaintiff argues that reporting missed payments is misleading because he incurred adverse notations on his credit file because of his mistaken expectation that autopayments would continue. However, the CRA Defendants did not misrepresent his late payments.").

Accordingly, Defendants' motion for judgment on the pleadings with respect to the Honda and Webbank-related allegations against both Defendants is granted.

### 2. Chase Account

Plaintiff alleges that certain unspecified credit reports furnished by TransUnion included an "inaccurate late payment notation for September 2022" on her Chase Account. (Compl. ¶ 40.) Specifically, Defendants reported Plaintiff late on an $8 interest payment to Chase even though Chase "forgave" the interest payment "through verbal communication," rendering the debt "null and void." (April 2023 Letters at ECF pp. 21, 24.) Plaintiff asserts that the "instant dispute is a relatively straightforward one – whether Plaintiff actually owed the $8 to Chase or whether Chase had nullified that obligation – that does not require any specialized expertise to resolve." (Opp. at 16.) Defendants contend that "[t]his claim presents numerous complexities" that Defendants are "ill-equipped to settle," such as how "Plaintiff gain[ed] the impression that Chase forgave and rendered the interest charge null and void," the "legal effect of rendering a charge 'null and void,'" and whether "Chase charge[d] the $8 as a result of a misapplication of law to fact." (Mot. at 13.)

The parties cite no case, and the court is aware of none, that is exactly on point with the facts of this case. However, the available caselaw leads the court to conclude that the Chase-related

11

inaccuracy, as currently alleged by Plaintiff, is objectively and readily verifiable.

TransUnion need not "adjudicate intricate issues, legal or otherwise," to ensure the accuracy of its Chase-related reports. *Hossain*, 693 F. Supp. 3d at 363. The accuracy of the Chase-related debt does not turn on an unresolved legal question, such as the application of a provision of the Bankruptcy Code to a plaintiff's loans,[7] the application of a state statute to a plaintiff's purported revocation of a purchase,[8] or the application of a statute of limitations to a plaintiff's debt.[9] Indeed, TransUnion cites no law or doctrine it would have to consult to determine the accuracy of its Chase-related reporting. (*See* Mot. at 12-13; Reply at 7-8.) And TransUnion cannot create a legal dispute simply by asserting that there is one.[10] *See Sessa*, 74 F.4th at 43 n.7 (noting that "there does not appear to be any legitimate *legal dispute* regarding the inaccuracy of the reported . . . payment. . . . Trans Union conceded at oral argument that neither [furnishers] would have had a colorable legal claim against [plaintiff] for recovery

---

[7] *See Mader*, 56 F.4th at 270.

[8] *See Morgan v. Equifax Info. Servs., LLC*, No. 23-CV-518 (MPS), 2024 WL 1160642, at *9-10 (D. Conn. Mar. 18, 2024) (alleged inaccuracy not objectively and readily verifiable where credit reporting agency would have been required to apply a Connecticut statute to determine whether plaintiff effectively revoked the relevant purchase).

[9] *See Hossain*, 693 F. Supp. 3d at 363-64 (alleged inaccuracy not objectively and readily verifiable where credit reporting agency would have been required to assess the applicability of the statute of limitations to plaintiff's debt); *see also Sanchez v. JPMorgan Chase Bank, N.A.*, No. 22-CV-1396 (SRU), 2023 WL 6049978, at *4-5 (D. Conn. Sept. 15, 2023) (same).

[10] Defendants' repeated assertion that Plaintiff's dispute over the Chase Account is a "legal" one, (*see* Mot. at 1, 4-5, 10-13; Opp. at 7-8), is unpersuasive because there is no "threshold inquiry as to whether an alleged inaccuracy is 'legal' or 'factual' in nature," *Sessa*, 74 F.4th at 40.

of the amount reported as a required . . . payment") (emphasis added).

Nor does the accuracy of the Chase-related debt turn on an intricate factual issue. Rather, this case more closely resembles other cases in which courts have held that an alleged inaccuracy was objectively and readily verifiable. For example, in *Morgan*, credit reporting agencies reported the plaintiff 30 days late on a monthly loan payment due on July 9, 2016. *Morgan*, 2024 WL 1160642, at *4-5. The court held that the accuracy of this reporting was "objectively and readily verifiable" where the plaintiff alleged that he "was never 30 days late" on the payment and attached as proof a letter from the furnisher stating that the loan "was paid in full or was satisfied on 07/22/2016." *Id.* at *5. Similarly, in *Sessa*, the Second Circuit opined that an alleged inaccuracy—that the plaintiff was past due on his lease's balloon payment—was objectively and readily verifiable where the lease itself did not require a balloon payment. *Sessa*, 74 F.4th at 43 n.7; *see also Hossain*, 693 F. Supp. 3d at 363 (discussing *Sessa* and noting that "[c]learly, it was objectively and readily verifiable from the lease's plain language that the plaintiff was not required to make a balloon payment, which, therefore, was represented inaccurately on the credit report").

Additionally, while out-of-circuit, the court finds the reasoning of *Kanani v. Experian Info. Sols., Inc.*, No. 23-CV-2483, 2024 WL 3729484 (M.D. Fla. Aug. 8, 2024) persuasive. There, the plaintiffs alleged that they entered in a "spoken walkaway agreement" that absolved them of any further financial obligations to their landlord. *Id.* at *1. Thereafter, their credit report showed they owed $5,380 in rent on their previous apartment, and the parties sued certain credit reporting agencies for willful and negligent violations of the FCRA. *Id.* The court denied the agencies' motion to dismiss, reasoning:

13

>Either Plaintiffs entered into an agreement with the landlord to discharge any further obligations or they did not. According to the well-pleaded allegations in Plaintiffs' Complaint, they did. Accepting those allegations as true for the purposes of the CRA Defendants' motion, Plaintiffs have adequately pleaded an objectively and readily verifiable inaccuracy in their credit information sufficient to survive dismissal.

*Id.* at *3.

Here, like the plaintiff in *Kanani*, Plaintiff entered into a verbal agreement with Chase in which it "forgave and rendered null and void" her $8 interest payment. (April 2023 Letters at ECF p. 21.) Either Chase forgave her interest payment or it did not. *See Kanani*, 2024 WL 3729484 at *3 ("Either Plaintiffs entered into an agreement with the landlord to discharge any further obligations or they did not."). There does not appear to be any "intricate issues, legal or otherwise," involved in ascertaining the truth of this claim. *Hossain*, 693 F. Supp. 3d at 363. And while Plaintiff has not provided documentary evidence akin to the furnisher letter in *Morgan* or the lease in *Sessa*, it appears that TransUnion could verify the accuracy of its Chase-related reporting by simply contacting Chase. While discovery may reveal facts to the contrary, at this stage, the court concludes that Plaintiff has plausibly alleged that the Chase-related inaccuracy was objectively and readily verifiable. *Sessa*, 74 F.4th at 43 n.7 (opining that accuracy of reporting was objectively and readily verifiable where "[t]here simply was no balloon payment due . . . as a matter of <u>fact</u>") (emphasis in original).

Because the Complaint plausibly alleges a cognizable inaccuracy as to the Chase Account, Defendants' motion for judgment on the

14

pleadings with respect to the Chase-related allegations against TransUnion is denied.[11]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part. Defendants' motion for judgment on the pleadings is GRANTED with respect to the Honda- and Webbank-related allegations against both Defendants. Defendants' motion for judgment on the pleadings is DENIED with respect to the Chase-related allegations against TransUnion. As there are no outstanding allegations against it, Defendant Equifax is TERMINATED from this action.

SO ORDERED.

Dated: Brooklyn, New York
August _1_, 2025

                                                  s/Nicholas G. Garaufis
                                                  NICHOLAS G. GARAUFIS
                                                  United States District Judge

---

[11] Defendants do not argue that, even if the Complaint plausibly alleges an inaccuracy as to the Chase Account, TransUnion "conduct[ed] a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). (*See generally* Mot.; Reply.) As such, the court does not address the issue of TransUnion's alleged failure to investigate the Chase-related inaccuracy. *Nevelskiy v. Advanced Pro. Grp., Inc.*, 735 F. Supp. 3d 148, 161 (E.D.N.Y. 2024) (order adopting Report and Recommendation) ("[I]t is not the Court's responsibility to make the [defendant's] arguments, especially since the [defendant] is represented by counsel.").